UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 6:23-CR-00223** |
| | **CIVIL NO. 6:25-CV-1336** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **JEREMY DENAGALL** | **MAGISTRATE JUDGE DAVID J. AYO** |

## RULING AND ORDER

Before the Court is a MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 (the "Motion") [Doc. 52] filed *pro se* by Defendant, Jeremy Denagall ("Denagall") on September 8, 2025. The government filed a Response on November 4, 2025. [Doc. 57]. After considering the arguments of the parties,[1] the record, and the relevant case law, the Motion is DENIED.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

#### A.    Indictment & Guilty Plea

On September 13, 2023, a federal grand jury returned a six-count Indictment against Denagall, charging him with possession with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Count 1); possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)

---

[1]    The Court determined that no evidentiary hearing on the Motion was required. "When the files and records of a case make manifest the lack of merit of a Section 2255 [motion], the trial court is not required to hold an evidentiary hearing." *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981); *see also United States v. Reed*, 719 F.3d 369, 373-74 (5th Cir. 2013). An evidentiary hearing on a § 2255 motion is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

(Count 2); possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 3); possession with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 4); possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Count 5); and possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1) and 18 U.S.C. § 924(a)(2) (Count 6).  [Doc. 1].  On November 15, 2024, Denagall pled guilty to Counts 1 and 4 of the Indictment.  [Doc. 35].  His plea was pursuant to a written plea agreement, which was accepted by the Court, and he was represented by counsel at his change of plea hearing.  [Docs.  37].

During the guilty plea colloquy, the Court established that Denagall had never been in a mental institution or treated for a mental illness of any kind; was not under the influence of any medications or drugs; was able to assist in his own defense; had discussed the charges with his attorney; and was satisfied with his attorney's representation.  Denagall also informed the Court that he had not been forced to plead guilty; he had seen and received a copy of the charges that had been filed against him; and he understood both the maximum possible sentence he faced and the effect of the sentencing guidelines in his case.  Denagall further stated that he understood his constitutional right to remain silent; his constitutional right to the assistance of counsel; his constitutional right to trial by jury; his constitutional right to a presumption of innocence that the government must overcome by proving guilt beyond a reasonable doubt; and his constitutional right to cross-examine opposing witnesses and to subpoena witnesses on his behalf.  [*See generally* Doc. 56].

Specifically, with respect to his possible term of imprisonment, Denagall

engaged in the following colloquy with the Court, as follows:

THE COURT: Are you pleading guilty of your own free will because you are guilty of these two counts?

THE DEFENDANT: Yes, sir.

THE COURT: All right.  So have you discussed with your attorney, Mr. Adams, what your Sentencing Guidelines might be in your case?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that that discussion is just -- it's an educated, not guess, but it's a projection. It's what he estimates your sentencing range might be, but we don't actually know that yet. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: We won't actually know what your guideline range is until after today when your presentence report is prepared. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that in addition to sentencing guidelines, I also have to consider some statutory factors that are set forth in 18 U.S.C. § 3553(a) that basically Congress passed to ensure that the sentence that you get is sufficient, but not more than necessary to comply with the purposes of sentencing. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: So based on the application of those sentencing factors, your sentence might actually be higher or lower than your Guideline range. Do you understand that?

THE DEFENDANT: Yes, sir.

[Doc. 56, pp. 16-17]. Furthermore, Denagall executed a form entitled "Understanding of Maximum Penalty and Constitutional Rights," which set forth the following maximum penalties for each count to which he pled guilty:

I, JEREMY DENAGALL, the above-named defendant, having been furnished a copy of the charges and having discussed same with my attorney, state that I understand the nature of the charges against me and the maximum possible penalties that may be imposed against me, as follows:

**PENALTY COUNT 1:** A term of imprisonment of not less than ten (10) years, or more than life pursuant to 21 U.S.C. § 841(b)(l)(A); a fine of not more $10,000,000, pursuant to 21 U.S.C. § 841(b)(l)(A), or both; a term of supervised release of at least five (5) years pursuant to 21 U.S.C. § 841(b)(l)(A); and a special assessment of $100 due at the time of the guilty plea, pursuant to 18 U.S.C. § 3013.

**PENALTY COUNT 4:** Possession with Intent to Distribute Fentanyl: A term of imprisonment of not more than twenty (20) years, per 21 U.S.C. § 841(b)(l)(C); a fine of up to $1,000,000, per 21 U.S.C. §841(b)(l)(C), or both; a term of supervised release of at least three (3) years, per 21 U.S.C.§ 841(b)(l)(C); and a special assessment of $100.00 due at the time of the guilty plea, pursuant to 18 U.S.C. § 3013.

...

I further state that my plea in this matter is free and voluntary and that it has been made without any threats or inducements whatsoever (except the Plea Agreement) from anyone associated with the State or United States Government or my attorney, and that the only reason I am pleading guilty is that I am in fact guilty as charged.

[Doc. 37-1, p. 1].

## B.    Sentencing

In the final Presentence Investigation Report ("PSR"), the probation office assessed Denagall with a base offense level of 30, pursuant to USSG §2D1.1(c)(5),

which addresses drug quantities of at least 1,000 kilograms but less than 3,000 kilograms of converted drug weight. [Doc. 51, ¶ 27]. Another two levels were added for possession of a dangerous weapon at the time of the predicate offense. [Doc. 31, ¶ 28]. After an adjustment for acceptance of responsibility, Denagall's total offense level was 29. [Doc. 31, ¶ 35]. The criminal history computation in the PSR established Denagall's criminal history category of IV. [Doc. 31, ¶ 52]. Denagall's guideline imprisonment range was 121 to 151 months. [Doc. 31, ¶ 94).

On February 25, 2025, Denagall was sentenced to 144 months imprisonment on each count, to run concurrent; five years of supervised release as to Count 1 and 3 years of supervised release as to Count 4, to run concurrent; and a $100 special assessment. [Doc. 48]. Denagall was informed by the Court at his sentencing hearing that he had the right to appeal his sentence and that a notice of appeal must be filed within 14 days of judgment if he wished to appeal. The judgment was issued on February 26, 2025. [Doc. 49].

## C.    Instant Motion

On September 8, 2025, Denagall timely filed the instant Motion, requesting that the Court vacate, set aside, or correct his sentence. [Doc. 52]. In his Motion, Denagall argues that his guilty plea was not knowing and voluntary because it was induced by ineffective assistance of counsel. Denagall contends that, although he pled guilty to an offense carrying a statutory sentencing range of ten years to life imprisonment under 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), his attorney advised him that he would receive a sentence of approximately 77 months' imprisonment.

Denagall further argues that subsequent laboratory testing showed that the controlled substance at issue weighed less than the threshold amount necessary to trigger the statutory minimum penalty and that, had he known he remained subject to the ten-year mandatory minimum sentence, he would not have entered the plea. On September 11, 2025, the Court ordered the government to respond to Defendant's Motion. [Doc. 54].  The government's response was filed on November 4, 2025.  [Doc. 57].

All issues having been fully briefed, the Motion is ripe for review.

<u>LAW AND ANALYSIS</u>

**A.    28 U.S.C. § 2255 Standard**

Denagall seeks relief pursuant to 28 U.S.C. § 2255.  That section provides, as relevant here:

> (a)    A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  Section 2255 post-conviction relief is reserved for errors of constitutional dimension and other injuries that could not have been raised on direct appeal and, if left unaddressed, would result in a complete miscarriage of justice. *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *United States v. Payne*, 99 F.3d 1273, 1281 (5th Cir. 1996).

**B.    Ineffective Assistance of Counsel**

Although § 2255 proceedings are subject to certain procedural limitations, claims alleging ineffective assistance of counsel under the Sixth Amendment are properly raised in a collateral proceeding under § 2255. *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003). Such claims are analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail, a movant has the burden of showing (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 689–94, 104 S.Ct. 2052.

To establish deficient performance, a movant must prove that his counsel's assistance fell "'below an objective standard of reasonableness.'" *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003), *quoting Strickland*, 466 U.S. at 688, 104 S.Ct. 2052). In other words, he must show his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *United States v. Lincks*, 82 F.4th 325, 330–31 (5th Cir. 2023). When assessing whether an attorney's performance was deficient, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001), *citing Strickland*, 466 U.S. at *Id.* at 689. "[T]o establish prejudice, [the movant] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"

*Wiggins v. Smith*, 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), *quoting Strickland*, 466 U.S. at 694.  Finally, the movant must satisfy both prongs of the *Strickland* test.  *United States v. Lincks*, 82 F.4th 325, 330 (5th Cir. 2023) ("A failure to establish either prong defeats the claim.").

A voluntary guilty plea waives all non-jurisdictional defects in the proceedings against the defendant.  *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000), *citing United States v. Smallwood,* 920 F.2d 1231, 1240 (5th Cir.1991).  This includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary.  In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court applied the *Strickland* test to cases involving guilty pleas. The proper standard for measuring counsel's performance under the first prong of *Strickland* is reasonably effective assistance, that is, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994), *citing Strickland,* 466 U.S. at 687–88. The "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" remains a part of the analysis in the guilty plea context.  *Id.*  In order to show prejudice in the context of a guilty plea, the movant must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Lockhart*, 474 U.S. at 59.  "[I]t is not enough, under *Strickland,* 'that the errors had some conceivable effect on the outcome of the proceeding.'"  *Motley*, 18 F.3d at 1226.  Rather, "to obtain relief on this type of claim [of erroneous advice to plead guilty], a petitioner must

convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). "The test is objective; it turns on what a reasonable person in the defendant's shoes would do." *United States v. Smith*, 844 F.2d 203, 209 (5th Cir. 1988).

Specifically, in the context of an ineffective assistance of counsel claim that asserts that a defendant's guilty plea was not knowing and voluntary, the focus is on "the defendant's decision making." *Lee v. United States*, 582 U.S. 357, 367 (2017). That is, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* at 369. Furthermore, regardless of his attorney's performance, "the conviction should be upheld if the plea was voluntary," for if the plea is voluntary, there is no prejudice. *Deville v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *United States v. Williams*, 116 F. App'x 539, 540 (5th Cir. 2004) ("[T]he conviction must be upheld if the plea was voluntary, even if counsel provided ineffective assistance.").

Here, Denagall argues that his attorney told him that he would be sentenced to 77 months imprisonment and at no point advised him that he could not be sentenced below the statutory 10 years. [Doc. 52, p. 4). For these reasons, Denagall contends that he was misled into pleading guilty. The Court finds that the record does not support Denagall's arguments.

Sworn statements made in open court during a plea hearing "carry a strong presumption of verity." *United States v. Martinez-Molina*, 64 F.3d 719, 733 (5th Cir. 1995), *citing Blackledge v. Allison*, 431 U.S. 63 (1977).  Likewise, documents executed in connection with a guilty plea are entitled to "great evidentiary weight." *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994).  The record before the Court — including Denagall's sworn statements regarding counsel, his acknowledgment of the maximum penalties applicable to the offenses of conviction, and the plea documents he executed — contradicts the post-sentencing allegations advanced in the instant Motion.

At the plea hearing, Denagall was placed under oath and confirmed that he had discussed the Sentencing Guidelines with counsel before pleading guilty. [Doc. 56, p. 2].  He acknowledged that any sentencing discussions with his attorney were only reasonable estimates based on pre-sentencing assessments; that no official guideline calculation would occur until completion of the final PSR; that the Court would also consider applicable statutory sentencing factors; and that those factors could result in a sentence either above or below the advisory guideline range.  [Doc. 56, pp. 16–17].  Denagall further confirmed that he understood he would remain bound by his plea even if the PSR resulted in a higher guideline range than anticipated.  [Doc. 56, p. 18].  In his Motion, Denagall fails to establish that the statements he made under oath are not accurate.

In addition to this colloquy, Denagall signed the plea agreement providing that the complete plea agreement is contained in that document and which set forth

specifically, that "No other agreement, understanding, promise or condition exists, nor will any such agreement, understanding, promise or condition exist unless it is committed to writing in an amendment attached to this document and signed by the Defendant, an attorney for the Defendant, and an attorney for the Government." [Doc. 37, p. 1]. Most importantly, the plea agreement specifies the statutory mandatory minimum sentence of 10 years with respect to Count 1, as follows:

JEREMY DENAGALL understands and agrees that:

1. The maximum punishment on Count 1 of the Indictment is **a term of imprisonment of not less than ten (10) years**, pursuant to 21 U.S.C. § 841(b)(l)(A); a fine of not more $10,000,000, pursuant to 21 U.S.C. § 841(b)(l)(A), or both;  and in addition to any term of imprisonment imposed by the Court, a term of supervised release of at least five (5) years pursuant to 21 U.S.C. § 841(b)(l)(A), if ordered by the court…

[Doc. 37, p. 2] (emphasis added). The plea agreement further provides:

7.      This case is governed by the Sentencing Reform Act…and the Defendant has discussed the Sentencing Guidelines and it applicability with his counsel and understands and acknowledges that a final determination of the applicable guideline range cannot be made until the completion of the presentence investigation;

8.      The sentencing judge alone will decide what sentence to impose; and

9.      The failure of the Court to adhere to a sentencing recommendation tendered by counsel shall not be a basis for setting aside the guilty plea which is the subject of this agreement.

[Doc. 37, p. 4]. Additionally, Denagall affixed his signature to this paragraph in the plea agreement:

I have read this plea agreement and have discussed it with my Attorney. I fully understand the plea agreement and accept and agree to it without reservation. I do this voluntarily and of my own free will. No threats have been made to me, nor am I under the influence of anything that

> could impeded my ability to fully understand this plea agreement.  I am satisfied with the legal services provided by my attorney in connection with this plea agreement and the matters related in this case.

[Doc. 37, p. 7].  Finally, Denagall also signed the form entitled "Understanding of Maximum Penalty and Constitutional Rights," which delineated the statutory penalties for each count, and which read as follows:

> I further stated that my plea in this matter is free and voluntary and that it has been made without any threats or inducements whatsoever (except the Plea Agreement) from anyone associated with the State or the United States Government  or my attorney, and that the only reason I am pleading guilty is that I am in fact guilty as charged.

[Doc. 37-1].  Denagall has presented no evidence to contradict these written statements.

To the extent that Denagall argues that the voluntariness of his plea was compromised by later changes to the weight of drugs involved in the predicate charges, that argument is contradicted by the sentencing record.  Denagall contends that, after entering a plea to an offense carrying a statutory sentencing range of ten years to life imprisonment under 21 U.S.C. § 841(b)(1)(A), later laboratory testing established that the methamphetamine weighed less than the amount necessary to trigger that statutory penalty provision.  The record reflects otherwise.  The indictment charged, and Denagall pled guilty to, possession with intent to distribute 50 grams or more of methamphetamine or 500 grams or more of a mixture containing methamphetamine on February 22, 2022, and the PSR cites Southwest Louisiana Criminalistics Laboratory Report No. SCL-23-2223 as finding 0.998 kilograms of methamphetamine associated with the February 22, 2022 traffic stop.  [Docs. 1; 51,

¶ 18]. Denagall does not explain how that laboratory finding reduced the drug quantity below the threshold applicable to his offense of conviction, nor does he identify any contrary laboratory evidence demonstrating that the statutory sentencing range disclosed at the plea hearing was incorrect. Accordingly, he fails to establish that counsel's alleged sentencing advice rendered his plea involuntary or that he suffered prejudice as a result of advice from counsel concerning the weight of the drugs underlying his predicate offense.

Considering the foregoing, Denagall's *post hoc* assertions regarding how he would have pled but for counsel's alleged deficiencies are not supported by the record. The contemporaneous evidence demonstrates that his guilty plea was knowing and voluntary, and that he cannot establish prejudice arising from counsel's plea or sentencing advice.

**CONCLUSION**

Therefore, for the reasons stated herein,

IT IS HEREBY ORDERED that defendant's MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 [Doc. 52] is DENIED. A separate judgment is entered herewith.

IT IS FURTHER ORDERED, under 28 U.S.C. § 2253(c)(2) and Rule 11(a) of the Rules Governing Section 2255 Proceedings, a Certificate of Appealability is DENIED.

THUS, DONE AND SIGNED in Chambers on this 1st day of July 2026.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE